IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

EVERETT H. GIBSON, JR.,

        Plaintiff,

v.                              CIVIL ACTION NO. 3:10-0725

ARGUS ENERGY, LLC, d/b/a
ARGUS ENERGY WV, LLC,
a Kentucky Corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 71). The issues have been fully briefed, and are ripe for disposition. For the following reasons, this motion is **DENIED**.

**I. BACKGROUND**

This action stems from an injury the plaintiff, Everett H. Gibson, Jr., suffered on the job while working for the defendant, Argus Energy, LLC, d/b/a Argus Energy WV, LLC ("Argus Energy").[1] Mr. Gibson claims that the work accident that caused his injuries falls within the deliberate intention exception to West Virginia's worker's compensation statute. *W. Va. Code* § 23-4-2(d)(2)(ii). Therefore, Argus Energy is not immune from suit. The following facts are undisputed.

---

[1] Gibson is a resident of Kermit, Wayne County, West Virginia. *Compl.* ¶ 1, Doc. 1-1. Defendant is a limited liability company organized under Kentucky law, with all members residing in Kentucky. *Notice of Removal* ¶ 9, Doc. 1. On the basis of the relief requested by Plaintiff, the amount in controversy is likely in excess of $75,000. *Id.* ¶ 11. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1332(a).

During the time period relevant to this case, Plaintiff was employed by Argus Energy as a loaderman at one of the company's surface mines. *Compl.* ¶ 1, 5. As part of this job, Mr. Gibson operated a loader, which he used to collect material to place into a rock truck for removal from the mine site. *Id.* ¶ 5. On or about January 30, 2008, Mr. Gibson was operating his loader alongside a highwall located in Increment #3 ("Inky 3") at Defendant's mine. *Def.'s Mem. Supp. of Mot. Summ. J.* 1, Doc. 72. As he pulled the machinery up to the highwall, part of the wall collapsed, falling onto the bucket of the loader, bending the bucket and jarring Mr. Gibson. *Id.* Mr. Gibson completed his shift following the accident, *id.* at 3, and continued to work for Argus Energy until March 10, 2008. On that date, Mr. Gibson suffered a second on-site accident, when a rock fell out of his loader bucket. *Dep. of Danny Wallen* 79, Doc. 71-5; *Accident Report*, Doc. 73.[2]

The remainder of the facts relevant to the plaintiff's deliberate intention claim are in dispute. Plaintiff asserts that he suffered an injury as a result of the January 2008 accident, and that the accident falls within the deliberate intention exception to West Virginia's workers' compensation scheme. Defendant contends that Mr. Gibson's injury is a result of the March 2008 accident and that Plaintiff has been unable to establish three out of the five necessary elements to a deliberate intention claim. Defendant has therefore moved for summary judgment.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ.*

---

[2] The accident report was amended almost a year after the March 2008 accident to include information regarding the January 2008 highwall incident. Argus Energy amended the report at the insistence of a MSHA inspector, and states that it is not an admission that the highwall collapse caused Plaintiff's injury. *Def.'s Reply* 3, Doc. 77. Defendant maintains the position that Plaintiff's injury is the result of the March 2008 accident. *Id.*

*P.* 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Generally, an employer participating in West Virginia's workers' compensation system is immune from suit by employees who suffered injury or death on the job. *W. Va. Code* § 23-2-6. There is an exception to this general immunity where an injury to an employee occurs as a result of "the deliberate intention of his or her employer to produce the injury or death." *W. Va. Code* § 23-4-2(c). There are two ways a plaintiff may establish "deliberate intention." First, a plaintiff can show that the employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee." *W. Va. Code* § 23-4-2(d)(2)(i). Second, a plaintiff can establish a deliberate intention claim by showing all of the following elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

*W. Va. Code* § 23-4-2(d)(2)(ii); *see also* Syl. Pt. 2, *Mayles v. Shoney's, Inc.*, 405 S.E.2d 15 (W. Va. 1991).

Plaintiff Gibson seeks to establish his deliberate intention claim under *W. Va. Code* § 23-4-2(d)(2)(ii). To survive the motion for summary judgment, Mr. Gibson "must make a prima facie showing of dispute on each of the five factors." *Marcus v. Holley*, 618 S.E.2d 517, 529 (W. Va. 2005) (quoting *Mumaw v. U.S. Silica Co.*, 511 S.E.2d 117, 120 (W. Va. 1998)). If Argus Energy "establish[es] that no material issue of fact is in dispute on any one of the five factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant." *Mumaw*, 511 S.E.2d at 122. Argus Energy asserts that Mr. Gibson has failed to prove a material issue of fact

as to elements (B), (D), and (E) of § 23-4-2(d)(2)(ii). The Court will examine each of these elements in turn.

### A.  **Actual Knowledge**

Mr. Gibson contends that Argus Energy knew of the unsafe condition presented by the highwall, and the risk it presented to the workers. Plaintiff cannot satisfy his burden under element (B) "merely by [providing] evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. Pt. 3, *Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385 (W. Va. 1991). However, to establish actual knowledge necessarily "requires an interpretation of the employer's state of mind, [which] must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn." Syl. Pt. 5, *Ryan v. Clonch Indus., Inc.*, 639 S.E.2d 756 (W. Va. 2006) (quoting Syl. Pt. 2, *Nutter v. Owens-Illinois, Inc.*, 550 S.E.2d 398 (W. Va. 2001)).

To support his contention, Mr. Gibson offers the deposition testimony of several co-workers, who state that the highwall had noticeable mud seams, cracks, and evidence of movement. *Dep. of William Ray Hannah* 33–34, Ex. 4 to *Pl.'s Resp.*, Doc.75-5; *Dep. of Greg Alan Bragg* 34, Ex. 5 to *Pl.'s Resp.*, Doc. 75-6; *Dep. of Christopher Copley* 25, 27–28, Ex. 6 to *Pl.'s Resp.*, Doc. 75-7. Plaintiff has also provided deposition testimony by Christopher Copley, indicating that Danny Wallen, the shift foreman, was informed of the unsafe conditions of the highwall, *Dep. of Christopher Copley* 54; Mr. Wallen nevertheless failed to inspect the highwall or remove the workers from the area, *Dep. of William Ray Hannah* 45, 47–48. Finally, Plaintiff submitted an expert report by Richard C. Allen, who concluded that, based on the conditions observed by the

miners the night of the accident, the highwall should have been considered dangerous, and "[a] prudent mine operator would have taken extra safety precautions." *Expert Report* 2, Ex. 8 to *Pl.'s Resp.*, Doc. 75-9. Defendant contests this evidence, asserting that Mr. Wallen did inspect the highwall the day of the accident, and that no worker reported any concerns to management regarding possible unsafe conditions at the highwall, such as mud seams or cracks. Further, as no prior accident had occurred at this highwall, Argus Energy asserts it had no prior knowledge of the risk posed by the highwall. Plaintiff has provided sufficient evidence to counter Defendant's assertions, and has established an issue of material fact with respect to element (B).

Plaintiff also cites *Ryan v. Clonch Industries, Inc.*, 639 S.E.2d 756 (W. Va. 2006). Under *Ryan*, a plaintiff may also satisfy his burden under element (B) by showing an employer's failure to undertake an assessment for workplace hazards mandated by law if that assessment "may have readily identified certain workplace hazards." *Ryan*, 639 S.E.2d at Syl. Pt. 6. Plaintiff asserts that Argus Energy was in violation of several state and federal regulations mandating the examination of highwalls for dangerous conditions, including: 30 C.F.R. § 77.1004(a) (requiring the examination of highwalls after every rain, freeze, or thaw); 30 C.F.R. § 77.1713 (requiring an examination for hazardous conditions at least once per working shift); *W. Va. Code St. R.* § 56-3-27.1 (mandating an examination of highwalls for dangerous conditions prior to any shift); and *W. Va. Code St. R.* § 56-3-27.2 (requiring an examination of all working places in the pit every four hours during a working shift). Plaintiff asserts that the shift foreman, Danny Wallen, failed to perform the required inspections the day of the accident. To support this assertion, Plaintiff cites the deposition testimony of Christopher Copley and William Ray Hannah, co-workers of Mr. Gibson, who state that Mr.

-6-

Wallen was not seen in the pit during the shift. *Dep. of Christopher Copley* 28; *Dep. of William Ray Hannah* 34.

Defendant contests the application of *Ryan*. Mr. Wallen testified during his deposition that he did complete the required inspections of the highwall and, on the basis of those examinations, concluded that the highwall was stable. *Def.'s Reply* 2, Doc. 77. Therefore, Defendant argues, as Mr. Wallen completed the mandated inspections, *Ryan* is not applicable. However, in order to reach this conclusion, the Court must weigh the believability of Mr. Wallen's testimony that he did complete the pre-shift and on-shift inspections of the highwall against the testimony from various co-workers of Mr. Gibson who state that they do not remember seeing Mr. Wallen anywhere in the pit or near the highwall the night of the accident. That is a question for the trier of fact. *See* Craig M. Reiser, Comment, *The Unconstitutional Application of Summary Judgment in Factually Intensive Inquiries*, 12 U. PA. J. CONST. L. 195, 220–21 (2009) (noting that improperly weighing evidence in evaluating summary judgment motions usurps the jury's factfinding function).

It is true that the evidence put forth by Plaintiff at most, under *Ryan*, would only support an *inference* that Argus Energy had subjective realization of an unsafe condition in attempting to "avoid a[] . . . viable deliberate intent action by conducting itself 'like the proverbial ostrich who sticks his head in the sand to avoid seeing the obvious . . . .'" *Ryan*, 639 S.E.2d at 766 (quoting *State ex rel. League of Women Voters of W. Va. v. Tomblin*, 550 S.E.2d 355, 368 (2001) (Davis, J., dissenting)). Circumstantial evidence is, however, sufficient to allow Plaintiff to survive summary judgment on this element. *Ryan*, 639 S.E.2d at Syl. Pt. 5. Plaintiff has proffered sufficient evidence to raise an issue of material fact with respect to Argus Energy's subjective realization of the risk posed by the highwall.

For the foregoing reasons, Defendant is **DENIED** summary judgment on element (B) of Plaintiff's deliberate intention claim.

**B.     Intentional Exposure**

To satisfy his burden under element (D), Plaintiff must provide sufficient evidence so that "[t]he fact finder, under this five-element test, reasonably may infer the intentional exposure if the employer acted with the required specific knowledge . . . and intentionally exposed the employee to the specific unsafe working condition." *Sias v. W-P Coal Co.*, 408 S.E.2d 321, 327 (W. Va. 1991) (citation omitted). Argus Energy asserts that there is insufficient evidence to support an issue of material fact as to this element. Again, Defendant relies on Danny Wallen's deposition testimony. Danny Wallen testified that he concluded through his inspections of the highwall that it was stable, and safe for the employees. As Argus Energy had no actual knowledge of the risk, there could be no intentional exposure.

However, as with the actual knowledge element, to establish the employer's intent to expose the employee to an unsafe working condition "requires an interpretation of the employer's state of mind" which is "ordinarily . . . shown by circumstantial evidence, from which conflicting interferences may often reasonably be drawn." Syl. Pt. 5, *Ryan*, 639 S.E.2d 756. As already established, Plaintiff has provided circumstantial evidence in support of his "actual knowledge" argument. This circumstantial evidence likewise supports a permissible inference that Argus Energy intentionally exposed Mr. Gibson to the unsafe working condition presented by the unstable highwall. Plaintiff cites testimony by Mr. Copley that Mr. Wallen was informed of the unsafe conditions of the highwall. According to Mr. Copley, rather than investigating this report, Mr. Wallen merely told the miners to watch the highwall. Plaintiff refers the Court to 30 C.F.R. §

77.1066 and *W. Va. Code* § 56-3-30.3(b), which require that where a highwall is unsafe or "is cracked and shows evidence of movement, or weakening," the area must be abandoned by all workers, other than those required to make the area safe. Plaintiff cites these regulations to bolster his argument, asserting that Argus Energy was obligated to undertake these measures when Mr. Wallen was alerted to the potential instability of the highwall. Further, Plaintiff's expert concluded that "[a] prudent mine operator would have taken extra safety precautions." *Expert Report* 2, Ex. 8 to *Pl.'s Resp.*, Doc. 75-9.

Taken in the light most favorable to the non-moving party, the plaintiff, the Court can only conclude there is an issue of material fact as to element (D) of Plaintiff's deliberate intention claim. To determine otherwise would require the Court to weigh the reliability of Mr. Wallen's testimony against that of Mr. Copley's. That is for the jury. Reiser, *supra*, at 220–21. Accordingly, Defendant is **DENIED** summary judgment as to element (D).

## C.     Proximate Cause

Argus Energy contends that Mr. Gibson's injury stemmed from the March 2008 accident, and not the January 2008 accident. If the January 2008 accident is not the proximate cause of Mr. Gibson's back injury, he cannot satisfy element (E) of his deliberate intention claim. To support this argument, Defendant points to the fact that Mr. Gibson did not seek medical treatment until after the second accident, and that the majority of the medical records list the March accident as the cause of Mr. Gibson's injury. *Def.'s Reply* 3–4, Doc. 77. However, an independent medical exam by Dr. David P. Herr, D.O. on July 1, 2009 lists the cause of injury as the highwall collapse in January 2008. Further, several deponents state they remember Mr. Gibson complaining of pain during the intervening six weeks between the two accidents. *Pl.'s Resp.* 13 n.11, Doc. 75. Taking the evidence

in the light most favorable to the non-movant, this is sufficient evidence for a jury to reasonably conclude that Mr. Gibson's back injury resulted from the January 2008 highwall collapse.

Defendant again invites the Court to weigh the reliability of the evidence proffered by Mr. Gibson. In particular, Argus Energy attacks the veracity of Dr. Herr's expert opinion, stating that there are no facts on the record to support his medical conclusions; instead, Dr. Herr merely relied on the oral history of the plaintiff. Defendant cites two cases in support of this argument. In *Evers v. General Motors Corp.*, 770 F.2d 984 (11th Cir. 1985), the Eleventh Circuit held "that a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers*, 770 F.2d at 986. The Eleventh Circuit concluded that the expert report could not save the plaintiff from summary judgment, as the expert failed to cite any specific facts or bases for his conclusions. *Id.* at 986–87. Here, in contrast, Dr. Herr cites the results of a medical history and examination taken of Mr. Gibson, in addition to medical records, as the basis for his conclusions. *Herr Report*, Ex. 11 to *Pl.'s Resp.*, Doc. 75-14 at 26.

Defendant also cites *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987). In that case, the Fifth Circuit concluded that an expert report was inadmissible as it relied on an unreliable patient oral history, an inconclusive test on the patient, and an insufficient test on rats. Defendant claims Mr. Gibson's oral history is similarly unreliable and self-serving, as he stated the cause of his injury was the January 2008 accident. The Court disagrees. The facts of *Viterbo* are distinguishable from Dr. Herr's report. First, the Fifth Circuit specifically stated that "a patient's oral history is generally considered reliable[.]" *Id.* at 423 (citing J. Weinsten & M. Berger, *Weinstein's Evidence* § 703 [2] (1985)). In that case, however, the oral history was found unreliable

as the patient omitted a family history of depression and hypertension, which could have explained the plaintiff's symptoms. *Id.* In contrast, the oral history provided by Mr. Gibson does not omit similarly critical information. While it is true that the injury could stem from the March 2008, and not the January 2008, accident, this is not sufficient grounds for this Court to disregard Dr. Herr's report. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* at 422 (citation omitted). In fact, Dr. Roderick Allen, who initially treated Mr. Gibson in March 2008, stated that the highwall fall could be a cause of an injury like Mr. Gibson's. *Dep. of Dr. Roderick Allen* 86, Ex. A to *Def.'s Reply*, Doc. 77-1. This is clearly a question that goes to "the weight to be assigned" Dr. Herr's report, and not its admissibility.

For the foregoing reasons, Defendant's motion for summary judgment as to element (E) is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 10, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE